## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF TENNESSEE

| | | |
|---|---|---|
| ABBY R. RUBENFELD | ) | **CIVIL ACTION NO.** |
| | ) | |
| Plaintiff, | ) | **CLASS ACTION COMPLAINT FOR** |
| | ) | **DAMAGES, EQUITABLE,** |
| **v.** | ) | **DECLARATORY AND INJUNCTIVE** |
| | ) | **RELIEF** |
| HCA HEALTHCARE, INC., | ) | |
| | ) | **JURY TRIAL DEMANDED** |
| Defendant. | ) | |

## CLASS ACTION COMPLAINT

1.     This is a civil action seeking monetary damages and injunctive and declaratory relief from HCA Healthcare, Inc., ("HCA"), arising from its failure to safeguard certain Personally Identifying Information[1] and Protected Health Information[2] (collectively, "PII") of millions of its patients. Consequently, those patients' PII—including their names, city, state, and zip code, email addresses, telephone numbers, dates of birth, gender, service date, location and next appointment date—has been permanently compromised.[3] Plaintiff Abby Rubenfeld is one of the victims. She therefore brings this case against HCA for herself and a class of all others whose PII was compromised.

## NATURE OF THE ACTION

2.     On or about July 10, 2023, HCA notified its patients "that a list of certain information with respect to some of its patients was made available by an unknown and

---

[1] The Federal Trade Commission defines "identifying information" as "any name or number that may be used, alone or in conjunction with any other information, to identify a specific person," including, among other things, "[n]ame, Social Security number, date of birth, official State or government issued driver's license or identification number, alien registration number, government passport number, employer or taxpayer identification number." 17 C.F.R. § 248.201(b)(8). To be clear, Plaintiff is not asserting that every example of identifying information was compromised in the Data Breach.

[2] Under the Health Insurance Portability and Accountability Act, 42 U.S.C. § 1320d *et seq.* ("HIPAA"), "protected health information" is defined as individually identifiable information relating to the past, present, or future health status of an individual that is created, collected, or transmitted, or maintained by a HIPAA-covered entity in relation to the provision of healthcare, payment for healthcare services, or use in healthcare operations. 45 C.F.R. § 160.103 *Protected health information*. A "covered entity" is further defined as, *inter alia*, a health care provider who transmits any health information in electronic form in connection with a transaction covered by HIPAA. *Id. Covered entity*. Health information such as diagnoses, treatment information, medical test results, and prescription information are considered protected health information under HIPAA, as are national identification numbers and demographic information such as birth dates, gender, ethnicity, and contact and emergency contact information. *Summary of the HIPAA Privacy Rule*, DEP'T FOR HEALTH & HUM. SERVS., https://www.hhs.gov/hipaa /for-professionals/privacy/laws-regulations/index.html (last accessed Apr. 16, 2020). Brightline is clearly a "covered entity" and the data compromised in the Data Breach that this action arises out of is "protected health information", subject to HIPAA.

[3] *HCA Healthcare Reports Data Security Incident*, HCA HEALTHCARE, INC., *available at* https://hcahealthcare.com/about/privacy-update.dot (last accessed July 13, 2023).

unauthorized party on an online forum…" (the "Data Breach").[4] What HCA neglected to mention is that the "online forum" it was referring to is on the dark web.

3.      Plaintiff and members of the Class have been significantly injured by the Data Breach and have incurred out-of-pocket expenses associated with the reasonable mitigation measures they were forced to employ. Plaintiff and the Class also now forever face an amplified risk of fraud and identity theft due to their sensitive PII falling into the hands of cybercriminals.

4.      On behalf of herself and the nationwide Class preliminarily defined below, Plaintiff brings causes of action sounding in negligence, *per se* negligence, invasion of privacy, breach of confidence, breach of contract, including breach of the covenant of good faith and fair dealing, trespass to chattels, bailment, unjust enrichment, and conversion. Plaintiff seeks damages and injunctive and declaratory relief arising from HCA's failure to adequately protect her highly sensitive PII.

## PARTIES

5.      Plaintiff Abby R. Rubenfeld is a natural person and citizen and resident of Davidson County, Tennessee, where she intends to remain. Plaintiff's PII was stored on HCA's data systems at all times material hereto.

6.      Defendant HCA Healthcare, Inc. is a Delaware Corporation with its principal place of business located at 1 Park Plz., Nashville, Tennessee 37203-6527.

7.      Defendant HCA Healthcare, Inc. touts itself as "one of the nation's leading providers of healthcare services, … comprised of 182 hospitals and 2,300+ sites of care in 20 states and the United Kingdom…", spanning the gamut from "hospitals, sites of care including surgery

---

[4] *Ibid.*

centers, freestanding ERs, urgent care centers, diagnostic and imaging centers, walk-in clinics and physician clinics."[5]

## JURISDICTION

8.     This Court has subject matter jurisdiction over this action pursuant to the Class Action Fairness Act, 28 U.S.C. § 1332(d). The proposed nationwide Class includes over 11 million people (well over the 100-member threshold). *See* 28 U.S.C. § 1332(d)(5)(B) (class must have at least 100 members). The vast majority of those 11 million Class Members are citizens of States different from HCA (*i.e.*, citizens of States other than Delaware or Tennessee). (*See* 28 U.S.C. § 1332(d)(2)(A) (minimal diversity where "***any*** member of a class of plaintiffs is a citizen of a State different from any defendant") (emphasis added)). The aggregate amount in controversy far exceeds $5,000,000.00, exclusive of interests and costs. (28 U.S.C. § 1332(d)(2).) Finally, this Court's CAFA jurisdiction is mandatory because more than 2/3 of Class Members are diverse from HCA.

9.     This Court has general personal jurisdiction over HCA because HCA's principal place of business is in Tennessee, and it regularly transacts business within the State.

## VENUE

10.     Venue is proper in this Court under 28 U.S.C. §§ 1391(a)(2), (b)(2) & (c)(2) because a substantial part of the events giving rise to the claims arise from HCA's business activities in this District.

## FACTUAL ALLEGATIONS

### A.     Plaintiff and the Class Members entrusted their PII to HCA

11.     Plaintiff and the members of the Class are individuals who entrusted their PII to HCA.

---

[5]  *Who We Are*, HCA HEALTHCARE, INC., *available at* https://hcahealthcare.com/about/, (last accessed July 13, 2023).

12.     As a condition for receiving healthcare services, Class members were required by HCA to confide and make available to it, its agents, and its employees, sensitive and confidential PII, including, but not limited to their names, city, state, and zip code, email addresses, telephone numbers, dates of birth, gender, service date, location and next appointment date.

13.     HCA acquired, collected, and stored a massive amount of PII of its patients.

14.     By obtaining, collecting, using, and deriving a benefit from those individuals' PII, HCA assumed legal and equitable duties to those individuals and knew or should have known that it was responsible for protecting their PII from unauthorized disclosure.

15.     Plaintiff has taken reasonable steps to maintain the confidentiality of her PII. Plaintiff relied on HCA to keep her PII confidential and securely maintained, to use that information for business purposes only, and to make only authorized disclosures of that information.

16.     Indeed, HCA maintains multiple policies which specifically acknowledge its legal obligations to maintain the privacy of patient PII entrusted to it and to only disclose such information under limited circumstances, none of which were present here.

17.     HCA's privacy policies are outlined in numerous documents contained on the Information Protection page of its website.[6]

18.     HCA's privacy policies circumscribe the way patients' PII can and cannot be disclosed to, *inter alia*, third parties. The Data Breach that is the subject of this civil action is not contemplated or permitted by HCA's privacy policies.

19.     Plaintiff entrusted her PII to HCA solely for the purpose of attaining healthcare services and arranging the payment therefor with the expectation and implied mutual

---

[6] *Information Protection*, HCA HEALTHCARE, INC., *available at* https://hcahealthcare.com/ethics-compliance/policies/ip.dot, *last accessed* (July 13, 2023).

understanding that HCA would strictly maintain the confidentiality of that information and safeguard it from theft or misuse.

20.     Plaintiff would not have entrusted HCA with her highly sensitive PII if she had known that HCA would not maintain it securely and protect it from unauthorized use or disclosure.

**B.     The security of patients' PII was compromised in the Data Breach**

21.     Plaintiff was a patient of HCA.

22.     Prior to and/or contemporaneously with utilizing HCA's services, its agents provided Plaintiff with various disclosure statements regarding HCA's Privacy Policy and its obligations under HIPAA to safeguard patients' PII–as HCA was required to do by law.[7]

23.     As a prerequisite to receiving health services from HCA, Plaintiff divulged her personal and sensitive PII to it, with the implicit understanding that it would be kept confidential. This understanding was based on all the facts and circumstances attendant to her receiving care, and the express, specific, written representations made by HCA and its agents.

24.     Plaintiff reasonably relied upon HCA's representations to her detriment and would not have provided her sensitive PII to HCA but for HCA's explicit and implicit promises to adequately safeguard that information.

25.     On or about July 10, 2023, HCA notified Plaintiff and all Class members that their PII had been compromised during the Data Breach.[8]

26.     According to HCA, it "recently discovered that a list of certain information with respect to some of its patients was made available by an unknown and unauthorized party on an

---

[7]  *See, e.g.*, 45 C.F.R. § 164.520(c)(2)(iii)(B).
[8]  *HCA Healthcare Reports Data Security Incident*, *supra* note 3.

online forum…", and such PII appeared to be compromised by way of "a theft from an external storage location exclusively used to automate the formatting of email messages."[9]

27.     HCA further explained that the unknown actor(s) gained access to PII including names, city, state, and zip code, email addresses, telephone numbers, dates of birth, gender, service date, location and next appointment date.[10]

28.     As a result of this Data Breach, the PII of approximately **11 million** HCA patients was compromised.[11]

29.     HCA's notification did not fully express the gravity of the Data Breach. On July 5, 2023, one or more cybercriminal(s) began selling data allegedly belonging to HCA on a forum used to sell and leak stolen data.[12]

---

[9] *Ibid.*
[10] *Ibid.*
[11] *Ibid.*
[12] *HCA confirms breach after hacker steals data of 11 million patients*, BLEEPINGCOMPUTER, (July 11, 2023), *available at* https://www.bleepingcomputer.com/news/security/hca-confirms-breach-after-hacker-steals-data-of-11-million-patients/.

30. According to the cybercriminal(s), the forum post included samples of the stolen database, which they claimed consisted of 17 files and 27.7 million database records:



31. As the post also indicated, the cybercriminal(s) appeared to have made a ransom demand to HCA, and gave it until July 10, 2023, to "meet the demands".

32. Having not heard from HCA by the 10th, the cybercriminal(s) began selling the full database, with other threat actors expressing interest in purchasing the data.[13]

33. The data compromised in the Data Breach "is valuable to threat actors conducting phishing attacks and scams, who could use it to launch convincing social engineering attacks against the exposed individuals."[14]

---

[13] *Ibid.*
[14] *Ibid.*

34. The Data Breach was far reaching. According to HCA, the Data Breach impacted the following covered entities within HCA's healthcare network:

**Alaska**

- Alaska Regional Hospital

- Alaska Regional Myhealth Clinic

- Alaska Regional Senior Health Clinic

_____

**California**

- Good Samaritan Hospital

- Los Robles Hospital And Medical Center

- Regional Medical Center Of San Jose

- Riverside Community Hospital

- Cardiovascular Institute of Los Robles Health System

- CareNow Urgent Care

- Los Robles Primary Health Care Clinic

_____

**Colorado**

- Medical Center Of Aurora

- North Suburban Medical Center

- P-Sl Medical Center

- Rose Medical Center

- Sky Ridge Medical Center

- Swedish Medical Center

- Advanced Internal Medicine - Denver

- Advanced Laparoscopic And General Surg

- Aspen Family Med. @ Green Valley Ranch

- Aspen Medical Group

- Aurora Denver Cardiology Associates

- Barolat Neurosciences

- Burn and Reconstructive Center at Swedish Medical Center

- CareNow Urgent Care

- Centennial Primary Care-Denver

- Colorado Breast Care Specialists

- Colorado Complete Health For Women

- Colorado Gynecologic Oncology Specialists

- Colorado Limb Consultants

- Colorado Orthopedic Specialists

- Colorado Spine Specialists

- Consultants In Obstetrics And Gynecology

- Denver Center for Bariatric Surgery

- Denver Endocrinology

- Denver Heart - Englewood

- Denver Heart - Rose Medical Center

- Denver Internal Medicine

- Denver International Spine Center (DISC)

- Denver International Spine Center

- Englewood Primary Care

- Espirt Ob/Gyn Center

- Falci Institute For Spinal Cord Injuries

- Healthone Cardiothoracic Surgery Assoc.

- Healthone Neurology Specialists

- Metropolitan OB/GYN

- Midtown OB/GYN

- Mile High OBGYN And Midwifery

- Mtn Orthopedic Trauma Surgeons @ Swedish

- North Denver Surgical Associates

- OrthoOne At Sky Ridge

- OrthoONE

- Orthopaedic Physicians Of Colorado

- Potomac Primary Care

- Precision Spine Specialists

- Premier Integrated OBGYN

- Rocky Mountain Ent Associates

- Rocky Mountain Gynecologic Oncology

- Rocky Mountain Pediatric Heart Surgery

- Rocky Mountain Pediatric Kidney Center

- Rocky Mountain Pediatric Orthopedics

- Rocky Mountain Pediatric Surgery

- Rocky Mountain Spine Clinic

- Rocky Mountain Surgical Associates

- Rocky Mt. Ped. Hematology Oncology

- Rocky Mtn Ped Infectious Disease Consult

- Sky Ridge Primary Care at Castle Rock

- Sky Ridge Primary Care

- Skyline Primary Care - Denver

- South Park Health Care

- Swedish Family Medicine

- The Women's Health Group

- Women's Care Of Colorado

_____

**Florida**

- HCA Florida Aventura Hospital

- HCA Florida Bayonet Point Hospital

- HCA Florida Blake Hospital

- HCA Florida Brandon Hospital

- HCA Florida Capital Hospital

- HCA Florida Citrus Hospital

- HCA Florida Englewood Hospital

- HCA Florida Fawcett Hospital

- HCA Florida Fort Walton-Destin Hospital

- HCA Florida Gulf Coast Hospital

- HCA Florida Highlands Hospital

- HCA Florida JFK Hospital

- HCA Florida JFK North Hospital

- HCA Florida Kendall Hospital

- HCA Florida Lake City Hospital

- HCA Florida Lake Monroe Hospital

- HCA Florida Largo Hospital

- HCA Florida Lawnwood Hospital

- HCA Florida Memorial Hospital

- HCA Florida Mercy Hospital

- HCA Florida North Florida Hospital

- HCA Florida Northside Hospital

- HCA Florida Northwest Hospital

- HCA Florida Oak Hill Hospital

- HCA Florida Ocala Hospital

- HCA Florida Orange Park Hospital

- HCA Florida Osceola Hospital

- HCA Florida Palms West Hospital

- HCA Florida Pasadena Hospital

- HCA Florida Poinciana Hospital

- HCA Florida Putnam Hospital

- HCA Florida Raulerson Hospital

- HCA Florida Sarasota Doctors Hospital

- HCA Florida South Shore Hospital

- HCA Florida South Tampa Hospital

- HCA Florida St. Lucie Hospital

- HCA Florida St. Petersburg Hospital

- HCA Florida Trinity Hospital

- HCA Florida Twin Cities Hospital

- HCA Florida University Hospital

- HCA Florida West Hospital

- HCA Florida West Tampa Hospital

- HCA Florida Westside Hospital

- HCA Florida Woodmont Hospital

- Oviedo Medical Center

- Plantation General Hospital

- UCF Lake Nona Hospital

- CareNow Urgent Care

- FC Ocala PCPLAB

- Gainesville GME Clinic

- Gulf Coast Orthopedic Surgery

- HCA Florida Advanced Cardiothoracic Surgery

- HCA Florida Advanced Women's OBGYN

- HCA Florida Atlantis Orthopedics

- HCA Florida Aventura Orthopedics

- HCA Florida Aventura Primary Care

- HCA Florida Bayonet Point Palliative Care

- HCA Florida Behavioral Health Specialists

- HCA Florida BH Spec - Orange Park Outpatient

- HCA Florida Biscayne Bay Orthopaedics

- HCA Florida Blake Medical Specialists

- HCA Florida Blake Primary Care

- HCA Florida Brandon Surgical Specialists

- HCA Florida Broward Gastroenterology

- HCA Florida Broward Orthopedics

- HCA Florida Broward Primary Care

- HCA Florida Broward Surgical Specialists

- HCA Florida Capital Cardiology Specialists

- HCA Florida Capital Pelvic Health and Incontinence

- HCA Florida Capital Primary Care

- HCA Florida Capital Pulmonary Specialists

- HCA Florida Capital Surgical Specialists

- HCA Florida Capital Vascular Surgery

- HCA Florida Capital Women's Health

- HCA Florida Cardiac Surgical Specialists

- HCA Florida Citrus Internal Medicine

- HCA Florida Citrus Orthopedic Associates

- HCA Florida Citrus Primary Care

- HCA Florida Citrus Surgical Specialists

- HCA Florida Citrus Women's Health

14

- HCA Florida Doral Medical Specialists

- HCA Florida Fawcett Surgical Specialists

- HCA Florida First Coast ENT

- HCA Florida First Coast Neurology

- HCA Florida First Coast Neurosurgery

- HCA Florida Fort Pierce Orthopedics

- HCA Florida Fort Pierce Surgical Specialists

- HCA Florida Fort Walton Beach Neurosurgery

- HCA Florida Fort Walton Beach Women's Health

- HCA Florida Gainesville GYN Oncology

- HCA Florida Gainesville Primary Care

- HCA Florida Gainesville Stroke Specialists

- HCA Florida Gainesville Surgical Group

- HCA Florida General and Weight Loss Surgery

- HCA Florida Gulf Coast Cardiology

- HCA Florida Gulf Coast Primary Care

- HCA Florida Gulf Coast Primary Care

- HCA Florida Heart and Lung - Gainesville

- HCA Florida Heart and Lung

- HCA Florida Heart and Vascular Care

- HCA Florida Heart Institute, Venice

- HCA Florida Heart Institute

- HCA Florida Highlands Medical Specialists

- HCA Florida Institute for Women's Health and Body

- HCA Florida Jacksonville Primary Care

- HCA Florida Jax Neurosurgery And Spine

- HCA Florida Jax Surgical Specialists

- HCA Florida JFK Primary Care

- HCA Florida Kendall Orthopedics

- HCA Florida Kendall Urology

- HCA Florida Lake City Primary Care

- HCA Florida Lake Mary Family Physicians

- HCA Florida Lake Mary Primary Care

- HCA Florida Lake Monroe Stroke Specialists

- HCA Florida Lake Nona Bariatric and Metabolic Surgery

- HCA Florida Largo Orthopedic Specialists

- HCA Florida Largo Surgical Specialists

- HCA Florida Lawnwood Bariatric Spec

- HCA Florida Maternal Fetal Medicine

- HCA Florida Memorial Hand Specialists

- HCA Florida Miami Electrophysiology

- HCA Florida Miami International Cardiology

- HCA Florida Miami-Dade Surgical Specialists

- HCA Florida Minimally Invasive Urogynecology

- HCA Florida Neurosurgery

- HCA Florida Neurosurgical Specialists

- HCA Florida Niceville Primary Care

- HCA Florida North Florida Internal Medicine

- HCA Florida North Florida Maternal Fetal Care

- HCA Florida North Seminole Family and Sports Medicine

- HCA Florida Oak Hill Family Care

- HCA Florida Oak Hill Internal Medicine

- HCA Florida Oak Hill Surgical Specialists

- HCA Florida Oak Hill Women's Health

- HCA Florida Ocala Neurosurgical Center

- HCA Florida Ocala Neurosurgical Specialists

- HCA Florida Ocala Primary Care

- HCA Florida Ocala Stroke Specialists

- HCA Florida Ocala Surgical Group

- HCA Florida Orange City Family Medicine

- HCA Florida Orange Family Care

- HCA Florida Orange Park ENT

- HCA Florida Orange Park Primary Care

- HCA Florida Orange Park Surgical Specialists

- HCA Florida Orange Park Women's Health

- HCA Florida Orlando Allergy and ENT

- HCA Florida Osceola ENT

- HCA Florida Osceola GYN Oncology

- HCA Florida Oviedo Surgical Specialists

- HCA Florida Palm Beach Gastroenterology

- HCA Florida Palm Beach Surgical Specialists

- HCA Florida Pasadena Primary Care

- HCA Florida Poinciana Gastroenterology

- HCA Florida Poinciana Primary Care

- HCA Florida Poinciana Surgical Specialists

- HCA Florida Pulmonary and Sleep Medicine

- HCA Florida Putnam Surgical Specialists

- HCA Florida Raulerson Orthopedics

- HCA Florida Raulerson Surgical Specialists

- HCA Florida Royal Palm OB/GYN

- HCA Florida Seminole Cardiology Specialists

- HCA Florida Seminole Neurosurgery

- HCA Florida Seminole Surgical Specialists

- HCA Florida St. Lucie Medical Specialists

- HCA Florida St. Petersburg Family Care

- HCA Florida Thoracic Surgery

- HCA Florida Transplant Specialists

- HCA Florida Trauma Specialists - Fort Pierce

- HCA Florida Trauma Specialists

- HCA Florida Trinity Breast Care and Surgery

- HCA Florida Vascular Specialists

- HCA Florida West Cardiology Specialists

- HCA Florida West GYN Oncology

- HCA Florida West Neurosurgical Specialists

- HCA Florida West Orthopedic Specialists

- HCA Florida West Palm Orthopedics

- HCA Florida West Primary Care

- HCA Florida West Surgical Specialists

- HCA Florida West Women's Health

- HCA Florida Westside Primary Care

- HCA Florida Women's Health Group

- Internal Medicine Assoc Of Plant City

- Internal Medicine at Trinity

- Largo Family Care

- MD Now Urgent Care

- Memorial Family Medicine - Beach Blvd.

- Memorial OCC Med

- Nature Coast Heart Rhythm Center

- Ocala Health Trauma

- Orange Park Pediatric Specialists

- Osceola Care Neurology GME

- Osceola Care Spec - GME

- Osceola GME Psychiatry

- Osceola GME Surgical Clinic

- Osceola Neurohealth Surgical Assoc

- Osceola Plastic Maxillofacial Cosmetic Reconstruction

- Osceola Surgical Associates

- Osceola Urology Associates

- Putnam Orthopedic Associates

- Surgical Bariatric Centers

- Treasure Coast Medical Spec - Cardio

- Treasure Coast Medical Specialists

- Treasure Coast Surgical Specialists

- Urgent Care Center At Pinnacle

- West FL Primary Care - Mclab

- West Palm Medical Group

- WFH GME Primary Care

---

**Georgia**

- Cartersville Medical Center

- Coliseum Medical Centers

- Doctors Hospital Of Augusta

- Fairview Park Hospital

- Memorial Health Meadows Hospital

- Memorial Health UMC Savannah

- Memorial Satilla Health

- Redmond Regional Medical Center

- Doctors Specialists - Bariatrics & Surgical

- Doctors Specialists - Cardiology

- Doctors Specialists - Cardiothoracic

- Doctors Specialists - Gastroenterology

- Doctors Specialists - Neurosurgery

- Doctors Specialists - Surgical & Trauma

- Doctors Urology & Pelvic Health

- Dublin Cardiology

- Eastside Family Medicine

- Eastside Heart And Vascular

- Eastside Medical Center

- Fairview Medical Group - Urology

- Fairview Specialists - Gastroenterology

- Memorial Health Meadows Physicians - Adult Primary Care

- Memorial Health Meadows Physicians - Children's Care

- Memorial Health Meadows Physicians - Heart Care

- Memorial Health Meadows Physicians - Surgical Care

- Memorial Health Meadows Physicians - Urology Care

- Memorial Health Meadows Physicians - Women's Care

- Memorial Satilla Cardiology

- Memorial Satilla General Surgery

- Memorial Satilla Neurology

- Memorial Satilla Ob/Gyn

- Memorial Satilla Orthopedic Surgery

- Memorial Satilla Pulmonary Medicine

- MH Meadows Phys - Immediate Care
- Redmond Family Care Center At Cedartown
- Redmond FCC At West Rome
- Redmond Medical Group East
- Redmond Medical Group

---

**Idaho**

- Eastern Idaho Regional Medical Center (EIRMC)
- West Valley Medical Center
- East Falls Burn
- East Falls Family Medicine Clinic
- East Falls Internal Medicine
- East Falls Neurosurgery And Spine
- East Falls Orthopaedics
- Mountainstar Women's Health
- West Valley Cardiology Services
- West Valley Medical Group Psychiatry
- West Valley Medical Group
- West Valley Medical Group

---

**Indiana**

- Terre Haute Regional Hospital
- Regional Hospital Healthcare Partners, LLC

---

**Kansas**

- Menorah Medical Center
- Overland Park Regional Medical Center

- Wesley Medical Center

- CareNow Urgent Care

- College Park Family Care - Prairie Star

- College Park Family Care Center

- College Park Family Care Center

- College Park Family Care

- Colorectal Surgery Associates - Lee's Summit

- Family Health Medical Group of Overland Park

- Heartland Women's Group At Wesley

- Johnson County Neurology

- Kansas City Gastroenterology & Hepatology Physicians Group

- Kansas City Heart Rhythm Institute

- Kansas City Joint Replacement and Sports Medicine

- Kansas City Vascular & General Surgery Group

- Kansas City Women's Clinic

- Kansas Physician Group

- Kansas Pulmonary And Sleep Specialists

- Maternal Fetal Associates of Kansas

- Menorah Pulmonary and Critical Care Consultants

- Midwest Breast Care

- Midwest Heart and Vascular Specialists

- Midwest Perinatal Associates

- Murlen - College Park Family Care

- Neurosurgery Of South Kc Medical Group

- Olathe - College Park Family Care

- Olathe NW - College Park Family Care

- OP Bariatrics And General Surgery

- Overland Park General And Trauma Surgery

- Overland Park Medical Specialist

- Overland Park Orthopedics, LLC

- Overland Pk - College Park Family Care

- Pediatric Surgical Specialists

- Quivira Internal Medicine

- Specialists in Women's Care

- Specialists In Women's Care

- Stanley - College Park Family Care

- Statland Medical Group

- The Surgical Weight Loss Institute of KC

- Town Plaza Family Practice

- Wesley Family Medicine

- Wesley Neurology Intensivists

- Wesley Pediatric Specialist

- Wesley Pediatrics

- Wesley Women's Care

- Wesley Woodlawn Hospital & ER

---

**Kentucky**

- Bowling Green Medical Clinic

- Frankfort Regional Medical Ctr

- Greenview Regional Hospital

- Capital Surgical Clinic

- Commonwealth Specialists Of Kentucky LLC

- Greenview Medical Group

- The Glasser Clinic

**Louisiana**

- Lakeview Regional Medical Center

- Rapides Regional Medical Center

- Tulane University Hospital & Clinic

- Lakeview Cardiology Associates, LLC

- Lakeview Regional - Northshore

- Lakeview Regional - Slidell

- Louisiana Heart Rhythm Institute

- LRPG - Lacombe - Specialty Services

- LRPG - Slidell Campus

- LRPG - Structural Cardiology Specialists

- LRPG Lakeview Circle Primary Care

- Rapides Cardiology And Vascular Clinic

- Rapides Digestive Center

- Rapides Orthopedic & Sports Medicine

- RRPG - Coliseum Boulevard

- RRPG - North Boulevard

- RRPG - Pineville Healthplex

- RRPG - Red River Cardiology

- RRPG - Surgical Specialists

- RRPG - Women's Health Clinic

- Tchefuncte Cardiology Assoc-Lakeview

**Missouri**

- Belton Regional Medical Center

- Centerpoint Medical Center

- Lafayette Regional Health Center

- Lee's Summit Medical Center

- Research Medical Center

- Bone & Joint Specialists

- CareNow Urgent Care

- Center For The Relief Of Pain

- Centerpoint Internal Medicine

- Centerpoint Orthopedics

- Centerpoint Physicians Group

- Centerpoint Primary Care

- Family Care At Arbor Walk

- Family Care of Eastern Jackson County

- Family Care Of Independence

- Family Health Specialists Of Lee's Summit

- Goppert Trinity Family Care

- Grandview Healthcare Clinic

- Heritage Physicians Group

- Independence Neurosurgery Services LLC

- Internal Medicine Group At RMC

- Jackson County Pulmonary

- Kansas City Neurology Associates

- Kansas City Pulmonary Practice, LLC

- Lee's Summit Family Care - Lakewood

- Lee's Summit Family Care

- Lee's Summit Family Medicine

- Midwest Cardiovascular & Thoracic Surgery

- Midwest Endocrine Associates

- Midwest Heart and Vascular Specialists
- Midwest Infectious Disease Specialists,
- Midwest Metropolitan Physicians Group
- Midwest Sports Medicine Physicians
- Midwest Women's Healthcare
- Neurosurgery Assoc Of Jackson County
- Research Neurology Associates - Kansas City
- Research Neuroscience Institute, LLC
- Research Orthopedics & Sports Medicine
- Research Urology Associates
- Southland Primary Care
- Structural Heart Clinic
- The Medical Group Of KC
- Town Plaza Women's Health
- Valley View Medical Associates
- Women's Center At Lee's Summit

-------------------------------------------

**Mississippi**

- Garden Park - Orange Grove Clinic
- Garden Park General Surgery
- Garden Park Pediatric Center
- Garden Park Physicians Group - Cowan Rd
- Garden Park Primary Care

-------------------------------------------

**Nevada**

- Mountainview Hospital
- Southern Hills Hosp & Med Ctr-Las Vegas

26

- Sunrise Hospital And Medical Center

- CareNow Urgent Care

- Las Vegas Complex Surgical Specialists

- Las Vegas Heart Associates

- Mountainview Cardiovascular &Thoracic

- MountainView Medical Associates Physical Medicine and Rehabilitation

- Mountainview PM&R

- Nevada Cardiovascular And Thoracic Inst

- Nevada Neurosciences Institute

_____

**New Hampshire**

- Frisbie Memorial Hospital

- Parkland Medical Center

- Portsmouth Regional Hospital

- Advanced Orthopedics - Gilford

- Appledore Family Medicine and Pediatrics

- Appledore Family Medicine

- Appledore Infectious Disease

- Appledore Internal Medicine

- Appledore Medical Group - Ear, Nose and Throat

- Appledore Neurology Associates

- Atlantic Surgical Associates

- Barrington Family Practice

- Beacon Internal Medicine

- Coastal Cardiothoracic Vascular Surgery

- Coastal New Hampshire Neurosurgeons

- Frisbie Cardiology Associates

27

- Frisbie Pediatric Associates

- Frisbie Primary Care - Skyhaven

- Frisbie Walk In - Barrington

- Frisbie Walk In - White Mountain

- Hampton Internal Medicine

- Parkland Pulmonary and Sleep Medicine

- Portsmouth Cardiology Associates

- Portsmouth Internal Medicine Associates

- Portsmouth Pulmonary Associates

- Rochester Primary Care

- Somerworth Primary Care

- Women's Health Associates of Derry

_____

**North Carolina**

- Angel Medical Center

- Asheville Specialty Hospital

- Blue Ridge Regional Hospital

- Highlands-Cashiers Hospital

- McDowell Hospital

- Mission Hospital

- Transylvania Regional Hospital

- Low Country Cardiology

_____

**South Carolina**

- Colleton Medical Center

- Grand Strand Medical Center

- Trident Regional Medical Center

- Advanced Centers For Internal Medicine

- CareNow Urgent Care

- Carolina Center of Gynecologic Oncology

- Charleston Heart Specialists

- Coastal Carolina Bariatric Center

- Coastal Carolina Surgical Specialists-Co

- Colleton Family Medicine

- Edisto Orthopedics And Sports Medicine

- Grand Strand Bariatrics

- Grand Strand Family Medicine - Murrells Inlet

- Grand Strand Heart & Vascular Care - Murrells Inlet

- Grand Strand Heart & Vascular Care - Myrtle Beach

- Grand Strand Orthopedics

- Grand Strand Primary Care Family Medicine - Little River

- Grand Strand Primary Care Internal Medicine - Myrtle Beach

- Grand Strand Primary Care Internal Medicine

- Grand Strand Spine & Neuro Care

- Grand Strand Surgical Care - Myrtle Beach

- Grand Strand Women's Care

- Live Oak Mental Health And Wellness

- Memorial Health University Physicians - Surgical and Bariatric Care

- SLS - Trident RMC

- Summerville Pediatric Specialists

- Summerville Women's Care

- Tri County Surgical

- Trident Internal Medicine

- Trident Neurosurgery

29

- Trident Orthopedic Specialists

- Walterboro OB/GYN

---

**Tennessee**

- Centennial Medical Center At Ashland City

- Centennial Medical Center

- Hendersonville Medical Center

- Horizon Medical Center

- Northcrest Medical Center

- Parkridge East Hospital

- Parkridge Medical Center

- Parkridge West Hospital

- Pinewood Springs

- Skyline Medical Center

- Southern Hills Medical Center

- Summit Medical Center

- Beckham Internal Medicine

- CareNow Urgent Care

- Centennial Heart At Parkridge

- Centennial Heart At Skyline

- Centennial Heart At Southern Hills

- Centennial Heart At Stonecrest

- Centennial Heart At Summit

- Centennial Heart, LLC

- Centennial Hospitalists, LLC

- Centennial Internal Medicine Continuity Clinic

- Centennial Medical Center Apps

- Centennial Neuroscience

- Centennial Thoracic Surgical Associates

- Centennial Women's Group - Bluegrass OB/GYN

- Centennial Women's Group Summit OBGYN - Hermitage

- Centennial Women's Group

- Family Practice Associates Of Southern Hills

- Gastroenterology Specialists Mid TN-Stonecrest

- Greenbrier Family Care

- H2U - Corporate Wellness Center

- Hermitage Primary Care

- Internal Medicine Associates Of Southern Hills

- Interventional Pulmonary Of Nashville

- Natchez Medical Associates

- Northcrest Family Care

- Northcrest Orthopaedic

- Northcrest Primary Care

- Parkridge Bone and Joint - McCallie Avenue

- Parkridge Bone And Joint East

- Parkridge Cardiology

- Parkridge East Internal Medicine

- Parkridge Medical Group Neurosurgery

- Parkridge Medical Group Primary Care

- Parkridge Medical Group Southside

- Parkridge Medical Group Specialists

- Pleasant View Family Care

- Portland Primary Care, LLC

- Skyline Madison Campus

- Skyline Medical Group, LLC

- Skyline Neuroscience Associates

- Southern Hills Family Medicine Continuity Clinic

- Southern Joint Replacement Institute - Nashville

- Spine Surgery Associates

- Spring Hill Physicians, LLC

- Sterling Primary Care Associates

- StoneCrest Family Physicians

- Stonecrest Internal Medicine

- Stonecrest Medical Center

- Tennessee Heart And Vascular

- The Frist Clinic

- Tristar Bone Marrow Transplant

- Tristar Cardiovascular Surgery

- Tristar Family Care - New

- Tristar Glycemic Optimization

- Tristar Gynecology Oncology

- Tristar Med Grp Centennial Primary Care

- Tristar Medical Group - Fairvue

- Tristar Medical Group - Legacy Health

- TriStar Medical Group - Skyline Primary Care

- TriStar Medical Group Children's Specialists

- White House Family Care

_____

**Texas**

- Corpus Christi Medical Center

- Del Sol Medical Center

- HCA Houston Clear Lake
- HCA Houston Conroe
- HCA Houston Kingwood
- HCA Houston Mainland
- HCA Houston Med Ctr
- HCA Houston N Cypress
- HCA Houston Northwest
- HCA Houston Pearland
- HCA Houston Southeast
- HCA Houston Tomball
- HCA Houston West
- Heart Hospital Of Austin
- Las Palmas Medical Center
- Medical City Alliance
- Medical City Arlington
- Medical City Dallas
- Medical City Denton
- Medical City Fort Worth
- Medical City Frisco
- Medical City Green Oaks Hospital
- Medical City Heart Hospital
- Medical City Las Colinas
- Medical City Lewisville
- Medical City McKinney
- Medical City North Hills
- Medical City Plano
- Medical City Weatherford

- Methodist Hospital Atascosa
- Methodist Hospital Specialty and Transplant
- Methodist Hospital Stone Oak
- Methodist Hospital Texsan
- Methodist Hospital
- Metropolitan Methodist Hospital
- North Austin Medical Center
- Northeast Methodist Hospital
- Rio Grande Regional Hospital
- Round Rock Medical Center
- South Austin Medical Center
- St. David's Georgetown
- St. David's Medical Center
- St. David's Surgical Hospital
- Texas Orthopedic Hospital
- Valley Regional Medical Center
- Woman's Hospital Of Texas
- Austin Diagnostic Clinic
- Advanced Cardiothoracic Surgery - Dallas
- Methodist Physicians Alamo City Surgeons - Stone Oak
- Alamo City Surgeons
- Arlington FM GME
- Arlington IM GME
- Arlington OB GYN GME
- Austin Heart
- Austin Ortho And Sports Medicine
- Austin Spine

- Bella OB/GYN

- Brain/Spine Specialists Ft. Worth

- Brownsville Bone And Joint

- Brownsville CV Surgery

- Brownsville Surgical Specialist

- Brushy Creek Family Physicians

- Cardio Texas New

- Cardiology Clinic Medical Center

- Cardiology Clinic Of San Antonio

- Cardiovascular Specialists Of Texas

- CareNow Urgent Care

- Caring For Women

- CCC Gateway

- CCSA New Braunfels

- CCSA Northeast

- CCSA Stone Oak

- Central Texas Brain And Spine

- Christi Heart Clinic

- Clear Lake Surgeons

- Complete Women's Care Center

- Conroe Physician Associates

- North Pines Surgical Specialists

- Family Practice Associates of Corpus Christi

- Complete Women's Care Center

- Brain and Spine Physicians of Houston

- Dallas Brain, Spine, and Skull Base Surgery

- Texas Cardiovascular Specialists

- Dallas Medical Specialist

- Dallas Sarcoma Associates

- Medical City Family Medicine

- Dallas Fort Worth Sarcoma Group

- DFW Thoracic and Lung Surgery

- Las Palmas Del Sol Urogynecology

- Channelview Family Medicine

- East Houston Specialists

- Neurosurgical Specialists Of El Paso

- El Paso Orthopedic Specialists

- El Paso Obstetrics and Gynecology

- Las Palmas Del Sol Internal Medicine

- Emergency Psychiatric Medicine

- Ep Surgical Specialists

- General Surgeons Of Pasadena

- Georgetown Center for Adult Medicine

- Georgetown Medical Clinic

- Georgetown Orthopedic Group

- Greater Houston Urology

- Texas Cardiovascular Specialists

- Gulf Coast Vascular

- H2U - WC-North Hills Hospital PLLC

- H2U - WD-PISD - PLLC

- HCA Houston Gastroenterology

- Health Central Women's Care Dallas

- Texas Cardiovascular Specialists

- Heart Center For Children

- Heart Failure

- Heartcare Specialists Alliance

- Heartcare Specialists

- Hepatology Program

- Houston Heart And Vascular

- Houston Heart

- Pediatrics of Greater Houston

- Houston Women's Care Assoc.

- Methodist Physicians iMED Healthcare Associates

- Internal Medicine Of Pasadena

- John A. Demopulos, Md

- Methodist Physicians Walk In Clinic

- Kingwood Internal Medicine Specialists

- Kingwood GME

- Lone Star Orthopaedic Institute

- Eastside Women's Healthcare Center

- Eastside Women's Healthcare - Horizon City

- Live By Losing

- Lone Star Medical Group

- Las Palmas Del Sol Obstetrics/Gynecology

- Maternal Fetal Consultants of Houston

- Matlock OBGYN

- Rio Grande Bone and Joint

- MCCH - Acute Kids Allen

- MCCH - Acute Kids Dallas

- Medical City Children's Cardiology Specialists

- Medical City Hip and Knee Specialists

- Pediatric Cardiac Intensivists of North Texas

- Medical Center Orthopedics

- Methodist Physicians Orthopedic Specialists

- Methodist Physicians Colorectal Surgery

- Methodist Physicians RiverCity CardioVascular

- Neuro Hospitalists Of Kingwood

- Neurosurgery Of Corpus Christi

- Austin Maternal Fetal Medicine

- North Cypress CV Surgeons

- Medical City Family Medicine

- Medical City Internal Medicine

- North Texas Heart Center

- Methodist Physicians Northeast Internal Medical Associates

- Northwest Houston Neurosurgery

- NTX Pulmonary Crit Cr Las Colinas

- NTX Pulmonary Crit Cr Lewisville

- NTX Surgical Oncology Associates

- NW Houston Surgical Associates

- The Oak Counseling and Psychiatric Clinic

- Brownsville OB/GYN

- OCC Providers Of Southwest

- Pearland Multispecialty Group

- Methodist Physicians Pediatric Specialists of Texas

- Pediatric Specialists Clear Lake

- Methodist Physicians Pediatric Specialists of Texas

- Premier Healthcare

- Renaissance Women's Group

38

- Rio Grande Valley Cardiology

- Rio Grande Neuroscience and Epilepsy Center

- Methodist Physicians Neurosurgery and Neurology Specialists

- Sawdust Family Medicine W/O Ob

- Cypress Family and Sports Medicine

- Serene OB/GYN

- SLS - MC Plano Providers

- Methodist Physicians Hill Country Immediate Care

- Methodist Physicians Hill Country Medical Group

- Methodist Physicians South Texas Cardiovascular Consultants

- Southwest Scoliosis and Spine Institute

- Specialists in Obstetrics and Gynecology

- Houston Heart

- Spero Women's Oncology Center

- St. David's Advanced Heart Care Ctr

- St. David's Heart and Vascular

- Spero Women's Oncology Center

- Austin Rehabilitation Specialists

- Methodist Physicians South Texas Cardiovascular Consultants

- Stephen C Carey

- Methodist Physicians South Texas Cardiology Specialists

- Surgery Associates Of North Texas

- Texas Bone and Joint - Las Colinas

- Surgical Care Of North Texas

- Southwest Cardiothoracic Surgeons

- SW Joint Replacement & Sports Medicine Center

- Texas Bone & Joint

- Texas Cardiac Arrhythmia

- Texas Cardiovascular Specialists

- Clear Lake Medical Group

- Texas Heart & Vascular

- Texas Heart

- Texas Robotic Surgery For Women

- Texas Stroke Institute

- The Binz

- Tomball Woman's Healthcare Center

- Total Women's Care Of North Texas

- Texas Bone and Joint

- Texas Cardiac Arrhythmia

- Premier Urology of Kingwood

- Webster OB/GYN

- West Houston OBGYN

- West Houston Orthopedics

- Wildflower OB/GYN

- Georgetown Center for Adult Medicine

- Windrose Family Medicine

- Woman's OB/GYN Specialist

- Women's Care Of North Texas

- Women's Health Alliance - Mesquite

- Serene OB/GYN

- Woman's Health Group

- Women's OB/GYN Center - Pasadena

- Women's Associates OB/GYN

_____

**Utah**

- Brigham City Community Hospital
- Cache Valley Hospital
- Lakeview Hospital
- Lone Peak Hospital
- Mountain View Hospital
- Ogden Regional Medical Center
- St Mark's Hospital
- Timpanogos Regional Medical Ctr
- CareNow Urgent Care
- East Falls Internal Medicine
- Heart Center At Lone Peak Hospital
- Heart Center At St. Mark's Hospital
- Heart Center Utah County
- Jordan Family Health
- Lakeview Internal Medicine
- Lakeview OB/GYN
- Layton Family Practice
- Lone Peak Family Health
- Lone Peak Family Medicine
- Lone Peak Internal Medicine
- Lone Peak OB/GYN
- Millcreek Primary Care
- Morgan Health Center
- Mountain Star Ogden Pediatrics
- Mountainstar Cache Valley Medical Group
- MountainStar Cardiovascular Surgery

- MountainStar Medical Group

- MountainStar Northern Utah Vascular

- Mountainstar Primary Care

- Mountainstar Snow Creek Medical Center

- Mountainstar West Point Family Medicine

- Northern Utah Cardiovascular

- Ogden Internal Medicine

- Peak Orthopaedics

- Providence Family Medicine

- St. Mark's Obstetrics and Gynecology Associates

- St. Mark's Taylorsville Clinic

- Vascular Specialists At St. Marks

- Wasatch Neurosurgery And Spine Assoc

**Virginia**

- CJW Medical Center

- Dominion Hospital

- Henrico Doctors Hospital

- Lewisgale Hospital-Alleghany

- Lewisgale Hospital-Montgomery

- Lewisgale Hospital-Pulaski

- Lewisgale Medical Center

- Reston Hospital Center

- Spotsylvania Regional Medical Center

- Stonesprings Hospital Center

- TriCities Hospital

- Advanced Care For Women

- Advanced Surgical Partners Of Virginia

- Cardiology Associates Of Richmond

- Cardiothoracic Surgical Associates

- CareNow Urgent Care

- Chippenham Orthopedics

- CJW Hospital Advanced Practice Providers

- CJW Wound Healing Center, LLC

- Commonwealth OB/GYN Specialists

- Commonwealth Surgical Associates

- Complete Care for Women

- HCA Virginia Primary Care

- Henrico Cardiology Associates

- James River Internists, LLC

- Levinson Heart Failure Clinic

- Lewisgale Physicians - Alleghany ENT

- Lewisgale Physicians - Alleghany Primary Care

- Lewisgale Physicians - ARH Surgery

- Lewisgale Physicians - Blacksburg Continuity Clinic

- Lewisgale Physicians - Blacksburg Ent

- Lewisgale Physicians - Blacksburg Ortho

- Lewisgale Physicians - Daleville

- Lewisgale Physicians - Family Medicine Of Blacksburg

- Lewisgale Physicians - Floyd

- Lewisgale Physicians - Gastroenterology

- Lewisgale Physicians - General Surgery & Infectious Disease

- Lewisgale Physicians - Women's Health Specialists

- LewisGale Physicians Cardiology

- LewisGale Physicians ENT

- LewisGale Physicians Family and Academic Medicine

- LewisGale Physicians Family Medicine

- LewisGale Physicians Family Medicine

- LewisGale Physicians Gastroenterology

- LewisGale Physicians General Surgery

- LewisGale Physicians Internal and Academic Medicine

- LewisGale Physicians Internal Medicine and Dermatology

- LewisGale Physicians Internal Medicine

- LewisGale Physicians Medical Oncology and Hematology

- LewisGale Physicians Mental Health and Academic Medicine

- LewisGale Physicians Neurosurgery

- LewisGale Physicians Orthopedics

- LewisGale Physicians Pediatrics

- LewisGale Physicians Primary Care

- LewisGale Physicians Pulmonology

- LewisGale Physicians Rheumatology

- LewisGale Physicians Urology

- LewisGale Physicians Women's Health Specialists

- Lewisgale Physicians-Dublin Family Medicine

- Lewisgale Physicians-Internal Medicine Of Blacksburg

- Lewisgale Physicians-SWVA Ortho & Spine

- Neurological Associates of Richmond

- OB GYN Specialists Of Richmond

- OB-GYN Associates

- Pratt Medical Group

- Premier Surgical

- Primary Health Group

- Richmond Breast Center

- Richmond Family Practice

- Richmond Infectious Disease Specialists

- Richmond Surgical

- SLS - Henrico Doctors

- Stonesprings Multi-Specialty

- Stonesprings Ob-Gyn

- Surgical Associates Of Richmond

- TriCities Surgical Associates

- Virginia Complete Care for Women

- Virginia Gynecologic Oncology
- Virginia Gynecologic Oncology.[15]

35.     The Data Breach was preventable and a direct result of HCA's failure to implement

adequate and reasonable cyber-security procedures and protocols necessary to protect patients' PII.

**C.     Healthcare providers like HCA are a prime target for cybercriminals**

36.     Over the past several years, data breaches have become alarmingly commonplace.

In 2016, the number of data breaches in the U.S. exceeded 1,000, a 40% increase from 2015.[16] The

next year, that number increased by nearly 50%.[17] The following year, the healthcare sector was

---

[15] *HCA Healthcare Reports Data Security Incident*, *supra* note 3.

[16]  *Data Breaches Increase 40 Percent in 2016, Finds New Report From Identity Theft Resource Center and CyberScout*, IDENTITY THEFT RESOURCE CENTER ("ITRC") (Jan. 19, 2017), https://www.idtheftcenter.org/data-breaches-increase-40-percent-in-2016-finds-new-report-from-identity-theft-resource-center-and-cyberscout/.

[17]     *2017 Annual Data Breach Year-End Review*, ITRC, (Jan. 25, 2018), https://www.idtheftcenter.org/images/breach/2017Breaches/2017AnnualDataBreachYearEndReview.pdf.

the second easiest "mark" among all major sectors and categorically had the most widespread exposure per data breach.[18]

37.     Hospital data breaches have continued to rapidly increase. According to the 2019 Healthcare Information and Management Systems Society Cybersecurity Survey, 82 percent of participating hospitals reported having a significant security incident within the last 12 months, with a majority of those being caused by "bad actors."[19]

38.     "Hospitals have emerged as a primary target because they sit on a gold mine of sensitive personally identifiable information for thousands of patients at any given time. From social security and insurance policies to next of kin and credit cards, no other organization, including credit bureaus, have so much monetizable information stored in their data centers."[20]

39.     The PII stolen in the Data Breach is significantly more valuable than the loss of, say, credit card information in a large retailer data breach. Victims affected by those retailer breaches could avoid much of the potential future harm by simply cancelling credit or debit cards and obtaining replacements. The information stolen in the Data Breach—dates of birth, dates of previous appointments, etc.—is difficult, if not impossible, to change.

40.     This data, as one would expect, demands a much higher price on the dark web. Martin Walter, senior director at cybersecurity firm RedSeal, explained, "Compared to credit card information, personally identifiable information... [is] worth more than 10x on the black

---

[18]     *2018 End-of-Year Data Breach Report*, ITRC, (Feb. 20, 2019), https://www.idtheftcenter.org/wp-content/uploads/2019/02/ITRC_2018-End-of-Year-Aftermath_FINAL_V2_combinedWEB.pdf.
[19]     *2019 HIMSS Cybersecurity Survey*, HEALTHCARE INFORMATION AND MANAGEMENT SYSTEMS SOCIETY, INC. (Feb. 8, 2019), https://www.himss.org/sites/hde/files/d7/u132196/2019_HIMSS_Cybersecurity_Survey_Final_Report.pdf.
[20]     Benishti, Eyal, *How to Safeguard Hospital Data from Email Spoofing Attacks*, INSIDE DIGITAL HEALTH, (Apr. 4, 2019), https://www.idigitalhealth.com/news/how-to-safeguard-hospital-data-from-email-spoofing-attacks.

market."[21] Likewise, the FBI has warned healthcare organizations that PII data is worth 10 times as much as personal credit card data on the black market.[22]

41.     PII data for sale is so valuable because PII is so broad, and it can therefore be used for a wide variety of criminal activity such as creating fake IDs, buying medical equipment and drugs that can be resold on the street, or combining patient numbers with false provider numbers to file fake claims with insurers.

42.     The value of Plaintiff's PII on the black market is considerable. Stolen PII trades on the black market for years, and criminals frequently post stolen private information openly and directly on various "dark web" internet websites, making the information publicly available, for a substantial fee of course. That is, of course, precisely what the cybercriminal(s) did here.

43.     As storehouses of that lucrative information, hospitals are also highly targeted by cybercriminals because, "primarily due to budget and resources, hospital security systems are often less sophisticated and decentralized than those in other industries, such as financial services," making them an easier target.[23]

**D.     HCA failed to sufficiently protect the PII that patients had entrusted to it**

---

[21] Tim Greene, *Anthem Hack: Personal Data Stolen Sells for 10x Price of Stolen Credit Card Numbers*, IT WORLD (Feb. 6, 2015), http://www.itworld.com/article/2880960/anthem-hackpersonal-data-stolen-sells-for-10x-price-of-stolen-credit-card-numbers.html.

[22] Stolen PHI health credentials can sell for up to 20 times the value of a U.S. credit card number, according to Don Jackson, director of threat intelligence at PhishLabs, a cyber-crime protection company who obtained his data by monitoring underground exchanges where cyber-criminals sell the information. *See* Humer, Caroline & Finkle, Jim, *Your medical record is worth more to hackers than your credit card*, REUTERS, (Sep. 24, 2014), https://www.reuters.com/article/us-cybersecurity-hospitals/your-medical-record-is-worth-more-to-hackers-than-your-credit-card-idUSKCN0HJ21I20140924. Dark web monitoring is a commercially available service which, at a minimum, Brightline can and should perform (or hire a third-party expert to perform).

[23] Benishti, *supra* note 20.

44.     As the FBI has explained, "[p]revention is the most effective defense against ransomware and it is critical to take precautions for protection."[24] HCA failed to take sufficient precautions in numerous ways, as detailed, *infra*.

i.     HCA failed to adhere to HIPAA

45.     HIPAA circumscribes security provisions and data privacy responsibilities designed to keep patients' medical information safe. HIPAA compliance provisions, commonly known as the Administrative Simplification Rules, establish national standards for electronic transactions and code sets to maintain the privacy and security of protected health information.[25]

46.     HIPAA provides specific privacy rules that require comprehensive administrative, physical, and technical safeguards to ensure the confidentiality, integrity, and security of PII is properly maintained.[26]

47.     HCA's Data Breach resulted from a combination of inadequacies showing it failed to comply with safeguards mandated by HIPAA. HCA's security failures include, but are not limited to:

a.     Failing to ensure the confidentiality and integrity of electronic PII that it creates, receives, maintains and transmits in violation of 45 C.F.R. § 164.306(a)(1);

b.     Failing to protect against any reasonably-anticipated threats or hazards to the security or integrity of electronic PII in violation of 45 C.F.R. § 164.306(a)(2);

c.     Failing to protect against any reasonably anticipated uses or disclosures of electronic PII that are not permitted under the privacy rules regarding

---

[24]     *How to Protect Your Networks from Ransomware*, FBI 3 (2016), *available at https://www.fbi.gov/file-repository/ransomware-prevention-and-response-for-cisos.pdf/view*.
[25] HIPAA lists 18 types of information that qualify as PHI according to guidance from the Department of Health and Human Services Office for Civil Rights, and includes, *inter alia*: names, addresses, any dates including dates of birth and medical record numbers.
[26] *See* 45 C.F.R. § 164.306 (Security standards and General rules); 45 C.F.R. § 164.308 (Administrative safeguards); 45 C.F.R. § 164.310 (Physical safeguards); 45 C.F.R. § 164.312 (Technical safeguards).

individually identifiable health information in violation of 45 C.F.R. § 164.306(a)(3);

d.      Failing to ensure compliance with HIPAA security standards by HCA's workforce in violation of 45 C.F.R. § 164.306(a)(4);

e.      Failing to implement technical policies and procedures for electronic information systems that maintain electronic PII to allow access only to those persons or software programs that have been granted access rights in violation of 45 C.F.R. § 164.312(a)(1);

f.      Failing to implement policies and procedures to prevent, detect, contain and correct security violations in violation of 45 C.F.R. § 164.308(a)(1);

g.      Failing to identify and respond to suspected or known security incidents and failing to mitigate, to the extent practicable, harmful effects of security incidents that are known to the covered entity in violation of 45 C.F.R. § 164.308(a)(6)(ii);

h.      Failing to effectively train all staff members on the policies and procedures with respect to PII as necessary and appropriate for staff members to carry out their functions and to maintain security of PII in violation of 45 C.F.R. § 164.530(b) and 45 C.F.R. § 164.308(a)(5); and

i.      Failing to design, implement, and enforce policies and procedures establishing physical and administrative safeguards to reasonably safeguard PII, in compliance with 45 C.F.R. § 164.530(c).

ii.    <u>HCA failed to adhere to FTC guidelines</u>

48.    According to the Federal Trade Commission ("FTC"), the need for data security should be factored into all business decision-making.[27] To that end, the FTC has issued numerous guidelines identifying best data security practices that businesses, such as HCA, should employ to protect against the unlawful exposure of PII.

---

[27] *Start with Security: A Guide for Business*, FED. TRADE COMM'N (Sep. 2, 2015), https://www.ftc.gov/system/files/documents/plain-language/pdf0205-startwithsecurity.pdf.

49.     In 2016, the FTC updated its publication, *Protecting Personal Information: A Guide for Business*, which established guidelines for fundamental data security principles and practices for business.[28] The guidelines explain that businesses should:

a.      protect the personal customer information that they keep;

b.      properly dispose of personal information that is no longer needed;

c.      encrypt information stored on computer networks;

d.      understand their network's vulnerabilities; and

e.      implement policies to correct security problems.

The guidelines also recommend that businesses watch for large amounts of data being transmitted from the system and have a response plan ready in the event of a breach.

50.     The FTC recommends that companies not maintain PII longer than is needed for authorization of a transaction; limit access to sensitive data; require complex passwords to be used on networks; use industry-tested methods for security; monitor for suspicious activity on the network; and verify that third-party service providers have implemented reasonable security measures.[29]

51.     The FTC has brought enforcement actions against businesses for failing to adequately and reasonably protect customer data, treating the failure to employ reasonable and appropriate measures to protect against unauthorized access to confidential consumer data as an unfair act or practice prohibited by Section 5 of the Federal Trade Commission Act ("FTCA"), 15 U.S.C. § 45. Orders resulting from these actions further clarify the measures businesses must take to meet their data security obligations.

---

[28]  *Protecting Personal Information: A Guide for Business*, FED. TRADE COMM'N (Sep. 28, 2016), https://www.ftc.gov/system/files/documents/plain-language/pdf-0136_proteting-personal-information.pdf.
[29]  *See Start with Security*, *supra* note 27.

52.     HCA's failure to employ reasonable and appropriate measures to protect against unauthorized access to patient PII constitutes an unfair act or practice prohibited by Section 5 of the FTCA, 15 U.S.C. § 45.

iii.     HCA failed to adhere to industry standards

53.     As stated above, the healthcare industry continues to be a high value target among cybercriminals. In 2017, the U.S. healthcare sector experienced over 330 data breaches, a number which continued to grow in 2018 (363 breaches).[30] The costs of healthcare data breaches are among the highest across all industries, topping $380 per stolen record in 2017 as compared to the global average of $141 per record.[31] As a result, both the government and private sector have developed industry best standards to address this growing problem.

54.     The United States Department of Health and Human Services' Office for Civil Rights ("DHHS") notes that, "[w]hile all organizations need to implement policies, procedures, and technical solutions to make it harder for hackers to gain access to their systems and data, this is especially important in the healthcare industry. Hackers are actively targeting healthcare organizations as they store large quantities of highly sensitive and valuable data."[32] DHHS highlights "several basic cybersecurity safeguards that can be implemented to improve cyber resilience which only require a relatively small financial investment, yet they can have a major impact on an organization's cybersecurity posture."[33] Most notably, organizations must properly encrypt PII in order to mitigate against misuse.

---

[30]  2018 End of Year Data Brach Report, ITRC, (Feb. 20, 2019), https://www.idtheftcenter.org/wp-content/uploads/2019/02/ITRC_2018-End-of-Year Aftermath_FINAL_V2_combinedWEB.pdf.

[31]  *Ibid.*

[32]  *Cybersecurity Best Practices for Healthcare Organizations*, HIPAA JOURNAL (Nov. 1, 2018), https://www.hipaajournal.com/important-cybersecurity-best-practices-for-healthcare-organizations/.

[33]  *Ibid.*

55. The private sector has similarly identified the healthcare sector as particularly vulnerable to cyber-attacks both because of the of value of the PII that it maintains and because, as an industry, it has been slow to adapt and respond to cybersecurity threats.[34]

56. Despite the abundance and availability of information regarding cybersecurity best practices for the healthcare industry, HCA failed to adopt sufficient data security processes.

57. HCA failed to adequately train its employees on even the most basic of cybersecurity protocols, which could have prevented the Data Breach.

58. HCA's failure to implement these rudimentary measures made it an easy target for the Data Breach that came to pass.

**E.     Plaintiff and the Class Members were significantly harmed by the Data Breach**

59. As discussed above, PII is among the most sensitive, and personally damaging information. A report focusing on breaches in the healthcare industry found that the "average total cost to resolve an identity theft-related incident . . . came to about $20,000.00" per person, and that the victims were further routinely forced to pay out-of-pocket costs for health care they did not receive in order to restore coverage.[35]

60. Victims of medical identity theft can suffer significant financial consequences. "In some cases, they [must pay] the healthcare provider, repa[y] the insurer for services obtained by the thief, or . . . engage[] an identity service provider or legal counsel to help resolve the incident and prevent future fraud."[36]

---

[34] *10 Cyber Security Best Practices For the Healthcare Industry*, NTIVA (Jun. 19, 2018), https://www.ntiva.com/blog/10-cybersecurity-best-practices-for-the-healthcare-industry.
[35] Elinor Mills, *Study: Medical identity theft is costly for victims*, CNET (Mar. 3, 2010), https://www.cnet.com/news/study-medical-identity-theft-is-costly-for-victims/.
[36] *Fifth Annual Study on Medical Identity Theft*, PONEMON INSTITUTE LLC 1 (Nov. 18, 2015), https://static.nationwide.com/static/2014_Medical_ID_Theft_Study.pdf?r=65.

61.     Moreover, nearly half of identity theft victims lost their health care coverage as a result of a data breach incident, nearly one-third reported that their premiums went up, and forty percent never resolved their identity theft at all.[37]

62.     "Unfortunately, by the time medical identity theft is discovered, the damage has been done. Forty percent of consumers say that they found out they were a victim of medical identity theft only when they received collection letters from creditors for expenses that thieves incurred in their name. As a result, the consequences of medical identity theft are frequently severe, stressful and expensive to resolve."[38]

63.     Moreover, resolution of medical identity theft is time consuming to remedy. "Due to HIPAA privacy regulations, victims of medical identity theft must be involved in the resolution of the crime. In many cases, victims struggle to reach resolution following a medical identity theft incident."[39] Consequently, they remain at "risk for further theft or errors in [their] healthcare records that could jeopardize medical treatments and diagnosis."[40]

64.     As a result of the Data Breach, Plaintiff now faces, and will continue to face, a heightened risk of identity theft and fraud for the rest of her life.

65.     As a long-standing member of the healthcare community, HCA knew or should have known the importance of safeguarding patient PII entrusted to it and of the foreseeable consequences of a breach. Despite this knowledge, however, HCA failed to take adequate cyber-

---

[37] *Ibid.*
[38] *The Potential Damages and Consequences of Medical Identity Theft and Healthcare Data Breaches*, EXPERIAN (Apr. 13, 2010), https://www.experian.com/assets/data-breach/white-papers/consequences-medical-id-theft-healthcare.pdf.
[39] *Ibid.*
[40] *Ibid.*

security measures to prevent one of the most commonplace kinds of breach–ransomware– from happening.

66.     HCA has not provided any compensation to patients victimized in the Data Breach and has not offered to provide any assistance or compensation for the costs and burdens—current and future—associated with the identity theft and fraud resulting from the Data Breach.

67.     Even if HCA did reimburse Plaintiff for the harm she suffered, it is incorrect to assume that reimbursing a victim of the Data Breach for financial loss due to fraud makes that individual whole again. On the contrary, after conducting a study, the U.S. Department of Justice's Bureau of Justice Statistics found that "among victims who had personal information used for fraudulent purposes, 29% spent a month or more resolving problems" and that "resolving the problems caused by identity theft [could] take more than a year for some victims."[41]

68.     As a result of HCA's failure to prevent the Data Breach, Plaintiff and Class Members have suffered and will continue to suffer significant damages. They have suffered or are at increased risk of suffering:

> a.      The loss of the opportunity to control how their PII is used;
>
> b.      The diminution in value of their PII;
>
> c.      The compromise, publication and/or theft of their PII;
>
> d.      Out-of-pocket costs associated with the prevention, detection, recovery and remediation from identity theft or fraud, including the purchase of identity theft protection insurance and detection services;
>
> e.      Lost opportunity costs and lost wages associated with the time and effort expended and the loss of productivity from addressing and attempting to mitigate the actual and future consequences of the Data Breach, including

---

[41] *Victims of Identity Theft, 2012*, U.S. Dep't of Justice 10, 11 (Jan. 27, 2014), https://www.bjs.gov/content/pub/pdf/vit12.pdf.

but not limited to efforts spent researching how to prevent, detect, contest and recover from identity theft and fraud;

f.      Delay in receipt of tax refund monies;

g.      Unauthorized use of stolen PII;

h.      The continued risk to their PII, which remains in the possession of HCA and is subject to further breaches so long as HCA fails to undertake appropriate measures to protect the PII in their possession; and

i.      Current and future costs related to the time, effort, and money that will be expended to prevent, detect, contest, remediate and repair the impact of the Data Breach for the remainder of the lives of Plaintiff and Class members.

69.      Plaintiff has already incurred injury and harm as a result of the Data Breach.

70.      For example, in an effort to mitigate the heightened risk of identity theft and fraud that she now faces, Plaintiff will have to subscribe to a paid online credit monitoring service that provides identity theft protection services. While this credit monitoring service will allow Plaintiff to monitor her credit reports to determine whether suspicious activity has occurred, it is powerless to stop identity theft in advance and does not indemnify her from, or insure her against, the harm caused by the Data Breach.

71.      Plaintiff has also been forced, and will continue to be forced, to expend time and effort in order to mitigate the harm she has suffered on account of the Data Breach.

72.      For example, Plaintiff has expended time and effort responding to this data breach and she will have to monitor her identity and credit reports periodically, in addition to gathering documentation.

73.      To her knowledge, Plaintiff has not been the victim of any other data breach.

## CLASS ACTION ALLEGATIONS

74.     Plaintiff brings this case on her own behalf for the following proposed class ("the Class"), seeking both damages and equitable/forward-looking relief:

**All individuals whose PII was compromised in HCA's Data Breach**.

75.     Excluded from the Class are the officers, directors, and legal representatives of HCA and the judges and court personnel in this case and any members of their immediate families.

76.     This action is properly maintainable as a class action under Fed. R. Civ. Proc. 23.

77.     The Class is so numerous that joinder of all members would be impracticable. Upon information and belief, the Class consists of approximately eleven million members, spread across numerous states.

78.     There are questions of law and fact common to the Class, which predominate over any questions affecting only individual Class members. These common questions of law and fact include, without limitation:

    a.      Whether and to what extent HCA had a duty to protect the PII of Plaintiff and the Class;

    b.      Whether HCA failed to adopt the practices and procedures necessary to adequately safeguard the information compromised in the Data Breach;

    c.      Whether HCA adequately and accurately informed Class Members that their PII had been compromised;

    d.      Whether Class Members are entitled to actual damages, statutory damages, and/or punitive damages as a result of HCA's wrongful conduct; and

    e.      Whether Plaintiff and the Class are entitled to restitution as a result of HCA's wrongful conduct.

79.     Plaintiff's claims are typical of those of other Class members because her PII, like that of every other Class member, was compromised by the Data Breach. Further, Plaintiff, like all

Class members, was injured by HCA's uniform conduct. Plaintiff is advancing the same claims and legal theories on behalf of herself and all other Class members, and there are no defenses that are unique to Plaintiff. The claims of Plaintiff and those of other Class members arise from the same operative facts and are based on the same legal theories.

80.     Plaintiff will fairly and adequately represent and protect the interests of the Class in that she has no disabling conflicts of interest that would be antagonistic to those of the other members of the Class. The damages and infringement of rights Plaintiff suffered are typical of other Class members, and Plaintiff seeks no relief that is antagonistic or adverse to the members of the Class. Plaintiff has retained counsel experienced in complex consumer class action litigation, and Plaintiff intends to prosecute this action vigorously.

81.     The issues in this action are appropriate for certification because such claims present only particular, common issues, the resolution of which would advance the disposition of this matter and the parties' interests therein. Such particular issues include, but are not limited to, the questions identified in Paragraph 78 above.

82.     A class action would provide substantial benefits over other methods for the fair and efficient adjudication of this controversy, as the pursuit of numerous individual lawsuits would not be economically feasible for individual Class members, and certification as a class action will preserve judicial resources by allowing the Class's common issues to be adjudicated in a single forum, avoiding the need for duplicative hearings and discovery in individual actions that are based on an identical set of facts. In addition, without a class action, it is likely that many members of the Class will remain unaware of the claims they may possess.

83.     The litigation of the claims brought herein is manageable. HCA's uniform conduct, the consistent provisions of the relevant laws, and the ascertainable identities of Class members

demonstrate that there would be no significant manageability problems with prosecuting this lawsuit as a class action.

84.     Adequate notice can be given to Class members directly using information maintained in HCA's records.

85.     This proposed class action does not present any unique management difficulties.

86.     Class certification is also appropriate under Rule 23(b)(2) because HCA has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole.

<u>**CAUSES OF ACTION**</u>

<u>**FIRST CLAIM FOR RELIEF**</u>
**NEGLIGENCE and/or NEGLIGENCE *Per Se***
**(on behalf of the Nationwide Class)**

87.     Plaintiff repeats and incorporates by reference the preceding paragraphs.

88.      As a condition of receiving healthcare services, Plaintiff and Class members were obligated to provide HCA their PII.

89.     Plaintiff and the Class members entrusted their PII to HCA with the understanding that HCA would safeguard it.

90.     HCA had full knowledge of the sensitivity of the PII and the types of harm that Plaintiff and Class members could and would suffer if the PII were wrongfully disclosed.

91.     HCA had a duty to exercise reasonable care in safeguarding, securing, and protecting such information from being compromised, lost, stolen, misused, and/or disclosed to unauthorized parties. This duty includes, *inter alia*, designing, maintaining and testing HCA's security protocols to ensure that Plaintiff's and Class members' PII in its possession was

adequately secured and protected and that employees tasked with maintaining such information were adequately trained on cyber security measures regarding patient PII.

92.     Plaintiff and the Class members were the foreseeable and probable victims of any inadequate security practices and procedures that HCA employed. HCA knew of or should have known of the inherent risks in collecting and storing the PII of Plaintiff and the Class, the critical importance of providing adequate security of that PII, that it had inadequately trained its employees, and that its security protocols were insufficient to secure the PII of Plaintiff and Class members.

93.     HCA's own conduct created a foreseeable risk of harm to Plaintiff and Class members. HCA's misconduct included, but was not limited to, its failure to take the steps to prevent the Data Breach as set forth herein. HCA's misconduct also included its decision to not comply with industry standards for the safekeeping and authorized disclosure of patient PII.

94.     Section 5 of the FTC Act prohibits "unfair…practices in or affecting commerce," including, as interpreted and enforced by the FTC, the unfair act or practice by businesses, such as HCA, of failing to use reasonable measures to protect PII/PHI. The FTC publications and orders described above also form part of the basis of HCA's duty in this regard.

95.     HCA further violated Section 5 of the FTC Act by failing to use reasonable measures to protect patient PII/PHI and not complying with applicable industry standards, as described herein. HCA's conduct was particularly unreasonable given the nature and amount of PII/PHI it obtained and stored, and the foreseeable consequences of a data breach including, specifically, the damages that would result to Plaintiff and Class members.

96.     HCA further violated HIPAA, as more specifically described, *supra*.

97.    HCA further violated the Tennessee Identity Theft Deterrence Act, T.C.A. § 47-18-2107, by failing to notify Plaintiff and Class Members of the Data Breach within 45 days from the discovery or notification of the breach.

98.    Plaintiff and the Class members had no ability to protect their PII once they entrusted it to HCA.

99.    HCA has admitted that Plaintiff's and the Class members' PII was wrongfully disclosed to cybercriminals as a result of the Data Breach.

100.    HCA breached its duty to Plaintiff and the Class by failing to exercise ordinary and reasonable care in protecting and safeguarding their PII while it was within HCA's possession or control.

101.    HCA unlawfully breached its duty to Plaintiff and Class members by failing to have appropriate procedures in place to detect and prevent unauthorized dissemination of its patients' PII.

102.    HCA also unlawfully breached its duty to adequately disclose to Plaintiff and Class members the existence and scope of the Data Breach.

103.    But for HCA's wrongful and negligent breach of duties owed to Plaintiff and Class members, Plaintiff's and Class Members' PII/PHI would not have been compromised.

104.    As a result of HCA's negligence, Plaintiff and the Class have suffered and will continue to suffer damages and injury including, but not limited to, out-of-pocket expenses associated with mitigating against the heightened risk of identity theft and fraud caused by the Data Breach; the time and costs associated with remedying identity theft and fraud fairly attributable to the Data Breach; and time spent monitoring, addressing and correcting the current and future consequences of the Data Breach.

105.    These harms are directly and proximately caused by the Data Breach.

## SECOND CLAIM FOR RELIEF
### INVASION OF PRIVACY
**(on behalf of the Nationwide Class)**

106.    Plaintiff repeats and incorporates by reference the preceding paragraphs.

107.    Plaintiff and Class members took reasonable and appropriate steps to keep their PII confidential from the public.

108.    Plaintiff's and Class members' efforts to safeguard their own PII were successful, as their PII was not known to the general public prior to the Data Breach.

109.    Plaintiff and Class members had a legitimate expectation of privacy to their PII and were entitled to the protection of this information against disclosure to unauthorized third parties.

110.    HCA owed a duty to its patients, including Plaintiff and Class members, to keep their PII confidential.

111.    The unauthorized release of PII, especially PHI, is highly offensive to a reasonable person.

112.    Plaintiff's and Class members' PII is not of legitimate concern to the public.

113.    HCA knew or should have known that Plaintiff's and Class members' PII was private, as HCA is a "covered entity" subject to HIPAA.

114.    HCA publicized Plaintiff's and Class members' PII, by communicating it to cyber criminals who had no legitimate interest in this PII and who had the express purpose of monetizing that information by injecting it into the illicit stream of commerce flowing through the dark web.

115.    Indeed, not only is Plaintiff's and Class members' PII traveling the dark web, but it is being used to commit fraud; it is being disseminated amongst, *inter alia*, merchants, creditors, health care providers and governmental agencies.

116.     It is therefore substantially certain that the Plaintiff's and the Class members' PII is rapidly becoming public knowledge – among the community writ large – due to the nature of the ransomware campaign that procured it, and the identity theft that it is designed for.

117.     Unless and until enjoined, and restrained by order of this Court, HCA's wrongful conduct will continue to cause great and irreparable injury to Plaintiff and Class Members in that HCA's inadequate data security measures will likely result in additional data breaches. Plaintiff and Class members have no adequate remedy at law for the injuries that they will sustain in that a judgment for monetary damages will not prevent further invasions of the Plaintiff's and Class members' privacy by HCA.

**THIRD CLAIM FOR RELIEF**
**BREACH OF CONFIDENCE**
**(on behalf of the Nationwide Class)**

118.     Plaintiff repeats and incorporates by reference the preceding paragraphs.

119.     Plaintiff and Class members conveyed confidential and novel information to HCA, their PII.

120.     HCA had knowledge that the PII was disclosed to it in confidence.

121.     There was an understanding between HCA and Plaintiff and Class members that the confidence of their PII be maintained.

122.     HCA breached the confidences Plaintiff and Class members formed with it by disclosing their PII to cybercriminals.

123.     Unless and until enjoined, and restrained by order of this Court, HCA's wrongful conduct will continue to cause great and irreparable injury to Plaintiff and Class Members in that HCA's inadequate data security measures will likely result in additional data breaches. Plaintiff

and Class members have no adequate remedy at law for the injuries that they will sustain in that a judgment for monetary damages will not prevent further breaches of confidence by HCA.

**FOURTH CLAIM FOR RELIEF**

**BREACH OF CONTRACT INCLUDING THE IMPLIED COVENANT**
**OF GOOD FAITH AND FAIR DEALING**
**(on behalf of the Nationwide Class)**

124.    Plaintiff repeats and incorporates by reference the preceding paragraphs.

125.    HCA offered to provide healthcare services to Plaintiff and Class members in exchange for payment.

126.    Plaintiff and the Class accepted HCA's offer to provide healthcare services by paying for them and receiving said treatment.

127.    HCA required Plaintiff and Class members to provide their PII, including names, city, state, and zip code, email addresses, telephone numbers, dates of birth, gender, service date, location and next appointment date in order to receive services from HCA.

128.    Plaintiff and Class members exchanged valuable consideration – money – with HCA for goods and services, a crucial part of which was HCA's promise to protect their PII from unauthorized disclosure.

129.    In its privacy policies, HCA expressly promised Plaintiff and the Class that it would only disclose PII under certain circumstances, none of which relate to the Data Breach.

130.    Necessarily implicit in the agreement between HCA and its patients, including Plaintiff and Class members, was HCA's obligation to use such PII for business and treatment purposes only, to take reasonable steps to secure and safeguard that PII, and not make disclosures of the PII to unauthorized third parties.

131.    Further implicit in the agreement, HCA was obligated to provide Plaintiff and the Class with prompt and adequate notice of any and all unauthorized access and/or theft of their PII.

132.    Plaintiff and the Class would not have entrusted their PII to HCA in the absence of such agreement with HCA.

133.    HCA materially breached the implied contract(s) they had entered with Plaintiff and Class members by failing to safeguard such information and failing to notify them promptly of the intrusion into its computer systems that compromised such information. HCA further breached the implied contracts with Plaintiff and Class members by:

   a.    Failing to properly safeguard and protect Plaintiff's and Class members' PII;
   b.    Failing to comply with industry standards as well as legal obligations that are necessarily incorporated into the parties' agreement;

   c.    Failing to ensure the confidentiality and integrity of electronic PII that HCA created, received, maintained and transmitted in violation of the FTC Act and HIPAA.

134.    The damages sustained by Plaintiff and Class members as described above were the direct and proximate result of HCA's material breaches of its agreements.

135.    Plaintiff and Class members have performed as required under the relevant agreements, or such performance was waived by the conduct of HCA.

136.    Under the laws of Tennessee, good faith is an element of every contract. All such contracts impose upon each party a duty of good faith and fair dealing. The parties must act with honesty in fact in the conduct or transactions concerned. Good faith and fair dealing, in connection with executing contracts and discharging performance and other duties according to their terms, means preserving the spirit—not merely the letter—of the bargain. Put differently, the parties to a contract are mutually obligated to comply with the substance of their contract in addition to its form.

137.    Subterfuge and evasion violate the obligation of good faith in performance even when an actor believes their conduct to be justified. Bad faith may be overt or may consist of inaction, and fair dealing may require more than honesty.

138.    HCA failed to promptly advise Plaintiff and the Class of the Data Breach.

139.    In these and other ways, HCA violated its duty of good faith and fair dealing. Plaintiff and members of the Class have sustained damages as a result of HCA's breaches of the Contract, including breaches of the Contract through violations of the covenant of good faith and fair dealing.

**FIFTH CLAIM FOR RELIEF**
**TRESPASS TO CHATTELS**
**(on behalf of the Nationwide Class)**

140.    Plaintiff repeats and incorporates by reference the preceding paragraphs.

141.    Plaintiff and the Class entrusted their PII to HCA with the understanding that it would keep that information confidential.

142.    HCA intentionally dispossessed the Plaintiff and the putative members of the Class of their PII and/or used or intermeddled with the Plaintiff and the putative members of the Class's possession of their PII, when it allowed cybercriminals to access it, going far beyond the bounds of any consent Plaintiff and the Class bestowed upon HCA.

143.    As explained at length above, Plaintiff and the Class members were damaged thereby.

**SIXTH CLAIM FOR RELIEF**
**BAILMENT**
**(on behalf of the Nationwide Class)**

144.    Plaintiff repeats and incorporates by reference the preceding paragraphs.

65

145.     Plaintiff the Class, and HCA contemplated a mutual benefit bailment when the Plaintiff and putative members of the Class transmitted their PII to HCA solely for treatment and the payment thereof.

146.     Plaintiff's and the Class's PII was transmitted to HCA in trust for a specific purpose (treatment), with an implied contract that the trust was to be faithfully executed, and the PII was to be accounted for when the special purpose was accomplished.

147.     HCA was duty bound under the law to exercise ordinary care and diligence in safeguarding Plaintiff's and the Class's PII.

148.     Plaintiff's and the Class's PII was used for a different purpose than the Plaintiff and the Class intended, for a longer time period and/or in a different manner or place than the parties intended.

149.     As explained at length above, Plaintiff and the Class were damaged thereby.

### SEVENTH CLAIM FOR RELIEF
**UNJUST ENRICHMENT**
**(on behalf of the Nationwide Class)**

150.     Plaintiff repeats and incorporates by reference the preceding paragraphs.

151.     In the alternative to the claims alleged above, Plaintiff alleges that she has no adequate remedy at law and brings this unjust enrichment claim on behalf of herself and the Class Members.

152.     Plaintiff and Class Members conferred a monetary benefit on HCA in the form of payment for healthcare services. Plaintiff and Class Members also provided their PII to HCA.

153.     The money that Plaintiff and Class Members paid, directly or indirectly, to HCA should have been used by it, in part, to pay for the administrative costs of reasonable data privacy and security practices and procedures.

154. As a result of HCA's conduct described herein, Plaintiff and Class Members suffered actual damages in an amount equal to the difference in value between healthcare services associated with the reasonable data privacy and security practices and procedures that Plaintiff and Class Members paid for, and the inadequate healthcare services without reasonable data privacy and security practices and procedures that they received.

155. Under principles of equity and good conscience, HCA should not be permitted to retain money belonging to Plaintiff and Class Members because HCA failed to use that money to implement the reasonable data privacy and security practices and procedures that Plaintiff and Class Members paid for and that were otherwise mandated by HIPAA regulations, federal and state law, and industry standards and best practices.

156. HCA should be compelled to disgorge into a common fund for the benefit of Plaintiff and Class Members all unlawful or inequitable proceeds received by HCA.

157. A constructive trust should be imposed upon all unlawful or inequitable sums received by HCA traceable to Plaintiff and Class Members.

### EIGHTH CLAIM FOR RELIEF
**CONVERSION**
**(on behalf of the Nationwide Class)**

158. Plaintiff repeats and incorporates by reference the preceding paragraphs.

159. At all times relevant hereto, Plaintiff and Class Members had ownership rights to their PII.

160. HCA engaged in the wrongful act of disposing of the PII by giving cyber criminals access to it.

67

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff, ABBY R. RUBENFELD, individually, on behalf of herself and all others similarly situated, requests the following relief:

A.      An Order certifying this action as a nationwide class action and appointing Plaintiff as Class representative and her counsel as Class counsel;

B.      A mandatory injunction directing HCA to safeguard the PII of Plaintiff and the Class hereinafter adequately by implementing improved security procedures and measures;

C.      A mandatory injunction requiring that HCA provide notice to each member of the Class relating to the full nature and extent of the Data Breach and the disclosure of PII to unauthorized persons;

D.      An award of compensatory, restitutionary, punitive, exemplary, and statutory damages, as permitted by law.

E.      An award of attorneys' fees and costs;

F.      An award of pre- and post-judgment interest, costs, attorneys' fees, expenses, and interest as permitted by law; and

G.      Such other and further relief as this court may deem just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands a trial by jury on all issues so triable.

Dated: July 14, 2023                                  Respectfully submitted,

                                                                   */s/ Tricia Herzfeld*
                                                                   **Tricia Herzfeld (BPR No. 26014)**
                                                                   Joe P. Leniski, Jr. (BPR No. 22891)
                                                                   Benjamin A. Gastel (BPR No. 28699)
                                                                   Anthony Orlandi (BPR No. 33988)

HERZFELD, SUETHOLZ, GASTEL,
LENISKI and WALL PLLC
The Freedom Center
223 Rosa Parks Avenue, Suite 300
Nashville, Tennessee 37203
Telephone: (615) 800-6225
Email: tricia@hsglawgroup.com
        joey@hsglawgroup.com
        ben@hsglawgroup.com
        tony@hsglawgroup.com